UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **RICHARD PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:21-cv-00118-SLC |
| | ) | |
| **KELLEY CHEVY, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court in this employment discrimination case is a motion for sanctions filed by Defendant on October 19, 2021, asserting that Plaintiff fabricated evidence and committed perjury during his deposition and requesting that the Court dismiss his case as a sanction for such conduct. (ECF 13). The motion is now fully briefed. (ECF 14, 18, 19, 20). Having duly considered the motion, the Court will grant it in one limited respect but otherwise deny it without prejudice.

*A. Pertinent Background*

Plaintiff filed this case against his former employer in Allen County Superior Court on March 8, 2021, alleging that it discriminated and retaliated against him on the basis of his race, color, and sex, and then terminated his employment, all in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (ECF 2). Defendant subsequently removed the case here. (ECF 1). The Court conducted a preliminary pretrial conference on April 29, 2021, and entered a scheduling order setting Federal Rule of Civil Procedure 16(b) deadlines, including a discovery deadline of December 29, 2021. (ECF 11, 12).

Defendant filed the instant motion for sanctions on October 19, 2021, seeking the dismissal of Plaintiff's case as a sanction alleging that he fabricated evidence—specifically, a racist note he found in his work locker and produced in discovery—and perjured himself during his deposition. (ECF 13). Defendant also filed a memorandum and supporting evidence, including Plaintiff's deposition transcript and affidavits from various third parties. (ECF 14, 14-1 to 14-13). Plaintiff filed a response brief and memorandum on November 12, 2021, attaching his own evidence—namely, his own affidavit and an affidavit from a third party. (ECF 18, 19, 19-1, 19-2). Defendant filed a reply brief on November 19, 2021, and attached yet another piece of evidence. (ECF 20, 20-1).

### B. Legal Standard

"[T]his Court has the power to sanction [a plaintiff] if he has engaged in document fabrication and/or perjury, including through the sanction of dismissal with prejudice of [his] claims against [the defendant]." *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 997-98 (N.D. Ill. 2005) (collecting cases); *see Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) ("A district court has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith. Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." (citation and internal quotation marks omitted)). "Precedent teaches that a district court's authority to impose such sanctions comes from two sources: Federal Rule of Civil Procedure 37 and the Court's own inherent powers." *REP MCR Realty, L.L.C.*, 363 F. Supp. 2d at 998 (citation omitted); *see also JFB Hart Coatings, Inc. v. AM Gen., LLC*, 764 F. Supp. 2d

974, 981 (N.D. Ill. 2011) (citing *Greviskes v. Univs. Rsch. Ass'n, Inc.*, 417 F.3d 752, 758-59 (7th Cir. 2005)).

"The exercise of either power requires the court to find that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Id.* (collecting cases). "Rule 37 itself does not specify a requisite mental state . . . ." *Id.* (citation omitted). However, the Supreme Court has opined that "Rule 37 should not be construed to authorize dismissal of an action when a plaintiff's failure to comply with his discovery obligations was due to his inability to comply rather than his willfulness, bad faith, or any fault." *Id.* (citation and internal quotation marks omitted).

"In civil cases, the facts underlying a district court's decision to dismiss the suit . . . as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence." *Id.* at 781. "Although dismissal with prejudice is a permissible judicial sanction for fraud on the court, the general rule is that before dismissing a suit with prejudice as a sanction for misconduct a court should consider the adequacy of a less severe sanction." *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999) (citations omitted).

### C. Discussion

1. The Racist Note

Defendant first claims that the racist note Plaintiff produced in discovery and allegedly found in his work locker in January 2020 is a fabrication. (ECF 14 at 3-5). In that regard,

3

Plaintiff testified at his deposition that he found a typed, racist note in his work locker. (ECF 14-1 at 84). He stated that he immediately called Teon Hoffman-Fryar, who came and looked at the note. (*Id.* at 86-87). Plaintiff further said that he folded the note, put it in his wallet, took it home and showed it to his wife, and then put it in his safe, where it still remained at the time of the deposition. (*Id.* at 88). He stated that he only unfolded the note at some later point in time to take a picture of it, and that the note was never crumpled. (*Id.*).

Defendant, however, produces a supplemental affidavit from Hoffman-Fryar dated September 17, 2021 (the "September Affidavit"), stating that Plaintiff would not immediately show him the note and that Plaintiff said he went around the locker room looking at other salesmens' notebooks in an attempt to match the handwriting in the note. (ECF 14-3 ¶¶ 3-4). Hoffman-Fryar further states that within two days, Plaintiff did show him the note, which was handwritten in blank ink on lined notebook paper torn out of a three-hole, spiral notebook. (*Id.* ¶ 5). Hoffman-Fryar states that the typed note Plaintiff produced in discovery is not the same note that Plaintiff showed him in the workplace. (*Id.* ¶ 6).

Defendant also observes that Plaintiff's Charge of Discrimination filed with the EEOC in June 2020 quotes the racist note, but the quote does not match the language in the note produced by Plaintiff in discovery. (ECF 14 at 4; *compare* ECF 2 at 5, *with* ECF 14-3 ¶ 6). Defendant further states that Plaintiff testified the note was never crumpled, but the note Plaintiff produced in discovery *is* crumpled. (ECF 14 at 5; *compare* ECF 14-1 at 88, *with* ECF 14-3 ¶ 6). Defendant contends that this evidence "clearly and convincingly" demonstrates that the racist note Defendant produced in discovery is not the note allegedly found by Plaintiff in his work locker in January

4

2020, and that Plaintiff (or someone directed by him) fabricated the produced note to bolster his case against Defendant. (ECF 14 at 5).

Plaintiff, in response, produces his own affidavit, stating that given that two years have passed "whether [Hoffman-Fryar] remembers if the ink was black or blue, or typed or written, is not dispositive of anything. The note was real and not fake." (ECF 19-1 ¶ 5.a). Plaintiff also produces yet another affidavit from Hoffman-Fryar dated November 12, 2021 (the "November Affidavit"), in which Hoffman-Fryar denies that he ever told Defendant's lawyer that the note was fake and clarifying that he "thought the note may have been fake, but it wasn't." (ECF 19-2 at 1 ¶ 4). Hoffman-Fryar attests that he "truly believe[s] the note left in [Plaintiff's] locker was real." (*Id.*).

The evidence Defendant points to does highlight some inconsistencies about the racist note. As Defendant observes, Plaintiff testified the note was never crumbled but the picture of the note he produced in discovery depicts a note that has been crumbled, at least to some extent. (*Compare* ECF 14-1 at 88, *with* ECF 14-3 ¶ 6). Further, the language purportedly quoting the content of the racist note in the June 2020 EEOC Charge of Discrimination (ECF 2 at 5 ("N*gger this ain't your business go back to the hood"), varies slightly from the language of the note produced in discovery (ECF 14-3 ¶ 6 ("F*CKING N*GGER[1] STOP SHOWING OUT AND GO BACK TO THE HOOD")). But these two pieces of evidence, standing alone, fall short of establishing that Plaintiff wilfully fabricated the note produced in discovery, as there could be other reasonable explanations for these two discrepancies.

---

[1] While the asterik exists as shown in the EEOC charge, the two asterisks in the typed note were substituted by the Court for purposes of this Opinion and Order.

Consequently, Defendant hangs its hat on the September Affidavit, in which Hoffman-Fryar admits he does not recall exactly what the racist note stated, but that the typed note produced in discovery is not the same handwritten note that Plaintiff showed him in the workplace. (ECF 14-3 ¶ 6 ("I do not recall exactly what the note stated, but it stated something to the effect of 'we don't' want you here' or 'you're not welcome here.'"); *see also* ECF 19-2 at 4). But in the November Affidavit, Hoffman-Fryar attests that "the note left in [Plaintiff's] locker was real" (ECF 19-2 at 1 ¶ 4), and he adds in an email to Plaintiff's attorney that he only "got a 5 second glimpse at [the note]" at the time (ECF 19-2 at 4). Notably, in the November Affidavit, Hoffman-Fryar is silent about his earlier statement in the September Affidavit that the racist note Plaintiff showed him in the workplace was handwritten and not typed.

While Defendant claims that Hoffman-Fryar's September Affidavit constitutes clear and convincing evidence that Plaintiff fabricated the note he produced in discovery (ECF 14 at 5), the Court—at least on the present record—disagrees. On one hand is Plaintiff's deposition testimony that the note was typewritten, and on the other is Hoffman-Fryar's September Affidavit stating that the note was handwritten on lined paper. This is a material factual dispute. And in any event, Hoffman-Fryar in his November Affidavit attempts to walk back the statements he made in the September Affidavit, which undercuts his credibility as a witness.

As a general matter, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A blatant contradiction, however, is more akin to "a situation

6

in which [a] video would 'speak for itself." *Oliver v. Greene*, 613 F. App'x 455, 457 (6th Cir. 2015) (quoting *Scott*, 550 U.S. at 378 n.5). Here, Defendant, in essence, asserts that Hoffman-Fryar's affidavit is more credible than Plaintiff's deposition testimony. But such a determination is premature. "[Plaintiff] urges one view, [Defendant's] evidence supports another. That is a dispute." *Greene*, 613 F. App'x at 458 (rejecting the defendant's argument that its evidence—deposition testimony, affidavits, and prison records—"blatantly contradicts" the plaintiff's version of the facts and renders the events undisputed).

The credibility of Plaintiff's testimony and Hoffman-Fryar's affidavit concerning the validity of the racist note produced in discovery is more appropriately framed in context of a fully-briefed motion for summary judgment. *See, e.g.*, *Vazquez v. Yeoman*, No. 1:CV-13-01067, 2015 WL 1932154, at *2 n.4 (M.D. Pa. Apr. 28, 2015) (denying the defendant's motion for sanctions where disputes of material fact would be confronted by the court in its disposition of a motion for summary judgment); *see also Montgomery v. Warren Cnty.*, No. 5:11-cv-00004-DCB-JMR, 2013 WL 3776937, at *4 n.7 (S.D. Miss. July 17, 2013). If a material dispute of fact ultimately precludes summary judgment, then the question is more appropriately addressed after further development of the record and resolution of any material factual disputes by the fact finder. *See Montano v. City of Chi.*, 535 F.3d 558, 567 (7th Cir. 2008) ("Where a witness's testimony is a compound of truth and falsity, the prudent course is to permit the jury to sort through it; [p]erjury is a circumstance to be weighed by the jury in determining a witness's credibility rather than a ground for removing the issue of credibility from the jury by treating the witness's entire testimony as unworthy of belief." (alteration in original) (citation and internal

7

quotation marks omitted)). Therefore, to the extent that Defendant contends on this record that Plaintiff's claims should be dismissed as a sanction for fabricating the racist note produced in discovery, the motion will be denied without prejudice.

### 2. Perjury During His Deposition

Defendant also claims that Plaintiff committed perjury in his deposition testimony in an effort to bolster his claims. "Perjury is defined as false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* at 564 (citations and internal quotation marks omitted). Specifically, Defendant contends that Plaintiff lied during his deposition about the circumstances of his termination, his interaction with Todd Macon at Glenbrook Dodge, Morgan Fox's statement to him about his lawsuit at a shopping mall, a phone call he received from Tori Wrobleski, his communication with David Meza, that he had never filed another lawsuit previously, and that he did not have high blood pressure or take medication for high blood pressure until his termination by Defendant in March 2020. (ECF 14 at 6-15).

#### a. Third-Party Affidavit Evidence

In an effort to show Plaintiff committed perjury about the circumstances of his termination, his interaction with Todd Macon at Glenbrook Dodge, Morgan Fox's statement to him about his lawsuit at a shopping mall, a phone call he received from Tori Wrobleski, and his communication with David Meza, Defendant produces affidavits from various individuals—who it claims are all "neutral third-parties who have no interest in this litigation"—denying or disputing various facts to which Plaintiff testified. (ECF 14 at 19; ECF 14-4 to ECF 14-11).

Defendant asserts these affidavits are "clear and convincing evidence" that Plaintiff lied under oath during his deposition in an effort to bolster his case. (ECF 14 at 19).

Plaintiff, in response, produces his own affidavit in which he affirms the version of the facts to which he testified at his deposition. (ECF 19-1). He states that "the fact that Defendant got a lot of witnesses to change their story does not mean that [he] committed perjury or other misconduct. . . ." (*Id.* ¶ 6; *see also* ECF 19 at 2). Thus, Plaintiff denies that he gave false testimony during his deposition. *Cf. Allen v. Chi. Transit Auth.*, 317 F.3d 696, 702 (7th Cir. 2003) (finding that the plaintiff committed perjury where he later admitted that he lied during his deposition); *see generally Montano*, 535 F.3d at 564 (considering that the plaintiffs did not admit to giving false testimony and that discrepancies between deposition and trial testimony is not necessarily perjury).

As already explained, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. As with Hoffman-Fryar's September Affidavit, Defendant produces various third-party affidavits and asserts that they are more credible than Plaintiff's deposition testimony. But these affidavits do not constitute a blatant contradiction. Rather, they create a material factual dispute, the resolution of which by this Court would be premature. *See Oliver*, 613 F. App'x at 458.

While the sheer amount of affidavit evidence presented by Defendant certainly casts doubt on Plaintiff's version of the facts, that determination is more appropriately assessed in the context

9

of a fully-briefed motion for summary judgment when all of the relevant facts are presented, rather than piecemeal in a motion for sanctions. *See, e.g.*, *Vazquez*, 2015 WL 1932154, at *2 n.4; *Montgomery*, 2013 WL 3776937, at *4 n.7. If a material dispute of fact ultimately precludes summary judgment, then the issue may be addressed after further development of the record and resolution of any material factual disputes by the fact finder. *See Montano*, 535 F.3d at 567. Consequently, to the extent that Defendant seeks the sanction of dismissal based on its production of these third-party affidavits, the motion will be denied without prejudice.

    b. <u>Evidence of a Prior Discrimination Lawsuit</u>

Plaintiff testified during his deposition that he had never filed another lawsuit—in particular, a discrimination lawsuit. (ECF 14-1 at 6). Defendant now produces a copy of an employment discrimination complaint filed by Plaintiff against a former employer in 2005, which Defendant obtained through a PACER search. (ECF 14 at 15; ECF 14-12). Defendant contends this is definitive evidence that Plaintiff lied during his deposition. Plaintiff, in hindsight, admits that his deposition testimony was inaccurate as to the prior lawsuit. He explains, though, that the prior lawsuit "was seventeen (17) years ago and [he] simply forgot about it at the time of [his] deposition." (ECF 19-1 ¶ 5.l).

Courts have imposed sanctions on a plaintiff for failing to disclose under oath that he had filed prior lawsuits. *See, e.g.*, *Dickerson v. Anderson*, No. CV608-074, 2008 WL 4845226, at *2 (S.D. Ga. Nov. 10, 2008) (finding that given the plaintiff's lengthy filing history, the plaintiff clearly had not forgotten that he had initiated previous civil suits as a prisoner, and thus, his explanation for his failure to disclose was a "transparent fabrication") (collecting cases). But here

Defendant's search revealed just one seventeen-year-old lawsuit. Thus, this is not a circumstance in which the plaintiff was a serial filer and failed to disclose a stream of prior lawsuits. *See, e.g.*, *Gillilan v. Walker*, No. CV 106-184, 2007 WL 842020, at *2 (S.D. Ga. Mar. 15, 2007) (recommending dismissal without prejudice where the plaintiff disclosed only two of his nineteen other federal cases). Consequently, this discrepancy, standing alone, is not enough upon which to conclude that Plaintiff willfully lied during his deposition when asked whether he had ever brought any prior lawsuits. *But see McDowell v. Seaboard Farms of Athens, Inc.*, No. 95-609-CIV-ORL-19, 1996 WL 684140, at *9 (M.D. Fla. Nov. 4, 1996) (dismissing the plaintiff's lawsuit where he failed to disclose just one prior lawsuit *and* there was other evidence of his dishonesty).

    c. Medical Record Evidence

Defendant in its reply brief asserts that it has received additional evidence since filing the motion for sanctions that shows Plaintiff lied during his deposition about the onset and treatment of his high blood pressure. (ECF 20 at 5-7). Plaintiff testified at his deposition that he was first diagnosed with high blood pressure in March 2020 after he was terminated by Defendant. (ECF 14-1 at 44-48). When asked whether he ever had issues with high blood pressure before March 2020, Plaintiff answered "never in my life." (*Id.* at 48). He further testified that he had never taken medication for high blood pressure before March 2020, and that beginning in March 2020 he experienced dizzy spells related to his high blood pressure. (*Id.*).

After Plaintiff's deposition, Defendant requested Plaintiff's medical records for the medical providers Plaintiff identified as having treated his high blood pressure since March 2020. (ECF 20 at 6). Defendant has now received medical records from Charles L. Coats, M.D., which

reveal that in March 2017 Plaintiff was seen for a follow up related to his high blood pressure, which was described as "chronic." (ECF 20-1 at 9). This record also reflects that Plaintiff was prescribed medication for high blood pressure at that time. (*Id.*). Thus, Plaintiff's medical records reveal that he was diagnosed with high blood pressure and was taking blood pressure medication more than three years before he was terminated by Defendant in March 2020. The medical records also show that Plaintiff was hospitalized in August 2018 for complaints of dizziness, which doctors diagnosed as relating to Plaintiff's hypertension. (ECF 20-1 at 23-30).

Plaintiff did not seek leave to file a sur-response to address this evidence. Thus, Plaintiff's deposition testimony about the onset and treatment of his high blood pressure is blatantly contradicted by his medical records. Further, it is extremely unlikely that Plaintiff forgot or was confused or mistaken that he was diagnosed with high blood pressure in the years preceding March 2020 or that he previously took medication for it. Nor is it reasonable to infer that Plaintiff simply forgot or was confused or mistaken that he was hospitalized in April 2018 for complaints of dizziness relating to his high blood pressure. These evidentiary conflicts cannot be characterized as "merely ambiguities or innocent discrepancies." *Montano*, 535 F.3d at 563.

Rather, on this record, the only reasonable conclusion is that Plaintiff deliberately lied during his deposition about the onset and treatment of his high blood pressure in an attempt to bolster his damages against Defendant. *See McDowell*, 1996 WL 684140, at *9. Thus, Plaintiff's inaccurate testimony about not having brought any prior lawsuits no longer stands alone, as it is now coupled with his wilful dishonesty about his history and prior treatment of high blood pressure.

"[F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system." *Secrease*, 800 F.3d at 402. "[A] district court's inherent power to sanction for violations of the judicial process is permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (citation and internal quotation marks omitted); *see also Secrease*, 800 F.3d at 402. "As a fraud on the court, perjury may warrant the sanction of dismissal." *Montano*, 535 F.3d at 564. Having said that, "before dismissing a suit with prejudice as a sanction for misconduct a court should consider the adequacy of a less severe sanction." *Oliver*, 200 F.3d at 466 (citations omitted).

At this point, the evidence of Plaintiff's wilful wrongdoing is limited to his dishonest deposition testimony about the onset and treatment of his high blood pressure. As such, on this record the sanction of dismissal seems overly harsh. Nor is there any indication that a lesser sanction would be ineffective. *Cf Secrease*, 800 F.3d at 402 (finding that lesser sanctions than dismissal would be insufficient where the wrongdoing "was so egregious and repeated," and the lesser sanction of barring the plaintiff from testifying on that claim "would have been the functional equivalent of dismissal"). Plaintiff's testimony about the onset and treatment of his high blood pressure appears relevant to only his damages and does not preclude his claims. Therefore, as a sanction for Plaintiff's dishonesty about the onset and treatment of his high blood pressure, the Court will preclude Plaintiff from asserting or introducing evidence that his high blood pressure, dizziness, or related symptoms were caused by or in any way associated with his claims in this suit or Defendant's termination of his employment. *See* Fed. R. Civ. P.

37(b)(2)(A)(ii). Plaintiff is FURTHER FOREWARNED that any additional evidence of his dishonesty under oath will result in further sanctions, UP TO AND INCLUDING MONETARY PENALTIES, PRECLUSION OF CLAIMS OR EVIDENCE, OR DISMISSAL OF HIS CASE. Plaintiff will also be ordered to pay the portion of Defendant's reasonable expenses, including attorney fees, that relate to the high blood pressure issue in filing this motion for sanctions. *See* Fed. R. Civ. P. 37(b)(2)(C).

### D. Conclusion

For the foregoing reasons, Defendant's motion for sanctions (ECF 13) is GRANTED IN PART to the extent that Plaintiff is precluded from asserting or introducing evidence that his high blood pressure, dizziness, or related symptoms were caused by or in any way associated with his claims in this lawsuit or Defendant's termination of his employment. Plaintiff is preliminarily ORDERED to pay the portion of Defendant's reasonable expenses, including attorney fees, that relate to the high blood pressure issue in filing this motion for sanctions. The motion is otherwise DENIED WITHOUT PREJUDICE. Defendant is to produce a fee affidavit in support of such expenses on or before January 21 2022, and the Court will then set the amount and Plaintiff's payment deadline. Plaintiff is FOREWARNED that any additional evidence of his dishonesty under oath will result in further sanctions, UP TO AND INCLUDING MONETARY PENALTIES, PRECLUSION OF CLAIMS OR EVIDENCE, OR DISMISSAL OF HIS CASE.

SO ORDERED. Entered this 7th day of January 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge